### No. 52.

### CARLOS LAVIOSA *v.* CHICAGO, ST. LOUIS AND NEW ORLEANS RAILROAD COMPANY.

1. The courts will not take notice, *ex propria motu*, of municipal legislation; ordinances, etc., of municipal governments must be established by proof.
2. Where, by law, certain restrictions are placed upon the construction of awnings, sheds or other works, there is an implied authorization to erect such structures, provi ed the prohibitions of the law be respected.

3. Without general legislation, denouncing all of its special class or character as nuisances, the municipal authorities of a city cannot declare any particular thing to be a nuisance and abate it as such.

4. The fact that a shed, or structure is erected by one citizen, in violation of a city ordinance, does not authorize another, of his own motion, to demolish it.

5. The fact that the authorities of a city government sanction and assist at the perpetration of an unlawful act, such as the tearing down of an awning, does not exonerate from liability those at whose instance and solicitation the illegal act was done.

6. While a citizen cannot prevent the application of the streets and banquettes, by lawful authority, to the use of a railroad company for right of way, etc., he may insist that such banquettes or streets be used in the manner calculated to inflict the least injury.

7. Municipal ordinances must be reasonable and not arbitrary or oppressive, otherwise they are void.

8. The courts, although they will exercise it with extreme caution and reluctance, have the power to annul municipal legislation, when the latter is in its nature unreasonable or oppressive.

9. Therefore, a railroad company may be prevented from making an unreasonable or oppressive use of a street or banquet, despite municipal legislation expressly authorizing such particular manner of use.

10. Where a plaintiff demands double relief, and this Court finds it necessary to remand for further evidence upon one issue, but is satisfied upon the other, it is not necessary to remand as to both.

*Appeal from the Fifth District Court, Parish of Orleans.*
*Rogers, Judge.*

*Bentinck Egan* for plaintiff, appellant.

*L. E. Simonds* for defendant.

The opinion was delivered by Thomas Gilmore, Esq., member of the bar, judge *ad hoc*, vice Rogers, judge, recused, having decided the case below.

GILMORE, judge *ad hoc*. This is a suit to recover four hundred dollars, as damages, for the alleged wrongful act of the defendant in tearing down an awning erected by plaintiff in front of his house on Euphrosine street, and also to remove the track of the defendant to a greater distance from the plaintiff's house, it being alleged that the track, as at present located,

interferes with the use and enjoyment by plaintiff of his property. There was judgment for the defendant in the lower court and plaintiff appealed.

It is suggested on the part of the defence, that the Supreme Court, to which the case was returnable, was without jurisdiction, by reason of amount, and that as no bill of exceptions appeared in the record, this Court cannot pass upon this case. Const., Art. 129.

The ruling in State ex rel. Darcy v. Parle, 25 La. An. 64, appears to be in point, and sustains the jurisdiction.

The question of the right of the defendant, under its contract with or license from the city to use Euphrosine and Magnolia streets for its track, does not properly arise; for, granting the right of the defendant to the use of those streets, still the question remains, whether the defendant, as owner of the adjoining lot, has the right to use its property in such a way as to be a cause of injury and disturbance to its neighbor, and whether it is liable for the injury and damage thereby caused, and the injury and damage caused by the demolition of the awning. Whether the plaintiff had permission from the city of New Orleans to erect the awning, or whether it was erected in violation of a city ordinance, in no manner justified the act of the defendant in tearing it down; and the countenance which it appears to have had from an employee of the city, in so doing, cannot excuse the act or exonerate it from liability.

The evidence establishes that the track of the defendant across its lots were in dangerous proximity to the plaintiff's house, and that the defendant is thus using its property in a way to injure its neighbors, the plaintiff.

The latter has been damaged, in consequence, by the reduced rental value of his property and by the tearing down of the awning erected by him. For this he is entitled to recover. But the pleadings and evidence in the cause do not enable the court to determine what further relief the plaintiff should have.

It is, therefore, ordered, adjudged and decreed that the judg-

ment appealed from be reversed and annulled ; and proceeding to render such judgment as should have been rendered by the District Court, it is further ordered, adjudged and decreed that plaintiff recover of defendant the sum of one hundred and twenty-five dollars, with legal interest from judicial demand until paid ; and that in other respects the cause be remanded to the Civil District Court for the parish of Orleans for such further proceedings as may be necessary to effect the removal of the defendant's track to a reasonable distance from plaintiff's property, defendant to pay costs of both courts.

## ON APPLICATION FOR A REHEARING.

McGLOIN, J.—A rehearing is demanded in this case with much earnestness. Several grounds are set forth, and supported by able argument.

It is alleged that the railroad company is not chargeable with the destruction of plaintiff's shed, which was the act of the city of New Orleans, said shed being by it rightfully demolished, as erected in violation of municipal laws. Ordinance No. 30, Leovy's Digest, p. 76, Arts. 72 to 76, are referred to. We find nothing in this ordinance which renders the erection of an awning without the City's assent illegal. What it does is to expressly forbid and to punish by fine the erection of signs or awnings, hanging or extending at a height of less than eight feet from the level of the pavement, or footway. The implication of this ordination is the very reverse of defendant's contention. If it be affirmatively made unlawful to build awnings in one particular manner, it follows that the erection of them is not wrongful *per se*, and that, if otherwise constructed, they are not harmful.

We cannot notice the later ordinance, No. 3065, inasmuch as it was not offered in evidence, and the Court cannot, of its own motion, take cognizance of municipal legislation ; City of New Orleans *v.* Labatt, 33 La. An. 107. If, however, we did take

notice thereof, it would not help the defendant, for we see nothing therein justifying the arbitrary destruction of awnings, without notice, by subordinate officers of the city. It is not shown, nor does it appear, that awnings, such as the one torn down, are nuisances *per se*. Neither is there any legislation, State or municipal, which make them such. It has been held that, without general legislation, declaring a particular class or character of objects to be a nuisance, the government of a city cannot declare a particular thing to be a nuisance and abate it as such. Yates *v.* Milwaukee, 10 Wall. 497 ; First Municipality *v.* Blineau, 3 La. An. 688 ; Kennedy *v.* Phelps, 10 La. An. 229 ; De Ben *v.* Girard, 4 La. An. 30.

If, therefore, this power did not belong to the Mayor and Administrators, in council assembled, we are at a loss to know how a mere subordinate of the municipal government could assume to exercise it.

The demolition of this awning was therefore unlawful, and the defendant company solicited it and furnished all the labor necessary to accomplish it. The mere fact that it obtained the sanction of a particular municipal officer and the presence of one of the city's employés, did not make the defendant less an *actor* in the wrong, and, as such, liable under the law for the damage done, which was, in this case, the value of the awning. La. C. C. 2315, 2324, 2323.

The evidence shows that the defendant, some years ago, curved its track upon its own land, without passing as close as it now does to the house of the plaintiff. It shows that the sleepers extend over the gutters, and are embedded in the banquette in front of the plaintiff's property, filling up said gutter; that the trains in passing lap over the banquette, prevent the erection of a shed or awning in front, shake the house of and otherwise grievously incommode the plaintiff. Were it a matter of absolute necessity that these injuries and inconveniencies should be imposed upon him in order that this railroad might have a right of way, there might be here a case of

*damnum absque injuria,* and the authorities cited would be applicable.

We believe, however, that, while a citizen cannot prevent the application of the public streets to uses such as that to which defendant seeks to apply the one in question, he may insist that such uses shall be so regulated that, while the reasonable convenience of the railway company is consulted, the least possible damage and injury shall be imposed upon himself. He might prevent the defendant from so running that its trains would just graze his doorway, or from constructing their track in such a manner as to render the passage of the streets unnecessarily dangerous to himself, or his vehicle, or to convert his property into a pond or swamp. To hold otherwise is to push this doctrine of the right of way much too far, and entirely beyond the reason of its existence.

Even if the city of New Orleans had authorized the defendant to thus unnecessarily annoy and injure the plaintiff, he would not be without his remedy.

It is now settled beyond recall, that municipal ordinances must be reasonable. Dillon on Municipal Corporations, Ed. 1881, sections 319, 328. They must not be arbitrary and oppressive. Ibid. section 320.

So is it firmly established that the courts, although they exercise the power with extreme caution and reluctance, have the right to annul municipal legislation which is, in its nature unreasonable and oppressive. Same authorities.

The fact that defendant had long used this portion of the track, curving further away from the property of plaintiff, satisfies us that the injury and damage being inflicted upon plaintiff is in no manner a matter of necessity, and we believe that he has the right to insist that the track shall be moved further out; and, as we have no data wherewith to determine how far the removal should be, we are compelled either to nonsuit plaintiff upon this point or to remand. We believe the latter course is the better, under the circumstances, avoiding, as it does, expense and delay.

The damages accorded we do not consider excessive, and we know of no reason why we should not set this portion of the case at rest, while we remand as to the balance. Defendant, in its application for a rehearing complains of this, but its counsel cites no authorities to support his position, and we see no reason for receding from what has been done.

Rehearing is, therefore, refused.